Mr. Chief Justice Shahkey
delivered the opinion of the court.
As a preliminary question we must determine how far our inquiries are to be extended. The defendants first demurrred to the bill, and the chancellor sustained the demurrer, and an appeal was taken from his decision to the former. supreme court, where the decree of the chancellor sustaining the demurrer and dismissing the bill was reversed, and the defendants ordered to answer.
If that decision of the supreme court is to be regarded as conclusive then we have nothing to do with the matter further, than to examine the correctness of the interlocutory decree as predicated on the bill, answers and proof. Although I was at first inclined to think that the judgment of the supreme court could not now be opened, and that it should be regarded as conclusive on the matter decided, yet, as the other members of the court entertain a different opinion, I willingly yield my impression and concede the point. The case was argued as though the merits of the demurrer were still open, and there are certainly strong reasons for so considering it. It is still in a state of progress, and the object is to arrive at a just conclusion under the settled principles on which courts' of equity proceed. The final decree should be made in strict conformity to these principles, and. if error has intervened in any stage of the cause, its effects would exist throughout the whole of the subsequent proceeding, and the final adjudication would necessarily be tainted by its influence.
This court cannot be bound to make a decree which would not be justified by the case made out; and if the decision overruling *515 the demurrer had been made in this court, we should not hesitate to correct our errors at the first opportunity before final judgment. Being called upon to act under an interlocutory decree of the supreme court, it is reasonable that we should pursue the same course, the two courts being substantially the same under different names. As we do not therefore consider ourselves estopped by the decision of the supreme court, the whole case is open on ■its merits, and we think the demurrer was correctly sustained by the chancellor.
The objection to the bill arises from a misjoinder of parties, as 'must appear from a review of the facts, and the character in which the defendants are charged. The debt, as it originally existed, was contracted by Joseph King in his lifetime; After his death William King administered, and gave Henry Cassels and Agrippa Gayden as sureties. In 1817, the orphans’ court affected to annul the first bond and directed a new one to be given, which was accordingly executed with David Lea and Richard Hurst as sureties. In 1819, David Lea and Richard Hurst were appointed administrators de bonis non, and they executed bond with Charles Davis and James Jones as sureties, and in December, 1819, the letters to Lea and Hurst were revoked, and John Burton was appointed administrator, and executed bond with Edmund Jenkins and William Gardner as sureties. In -1819, William King died, and by his will appointed John Burton his executor; who qualified and gave John Lowry and William Stuart as his sureties. While William King was acting ■ as administrator of Joseph King, William Rutherford, the plaintiff’s intestate, recovered judgment against him, in Louisiana, for the amount due him from Joseph King, which is the debt claimed by the bill. On this judgment from Louisiana, Rutherford instituted a suit in the superior court of Amite county against William King, and in April 1819, recovered judgment against him for the amount, not in his representative capacity but in his own. right, a part of which judgment was subsequently satisfied by execution. All of these parties are made defendants to cqmplainants’ ' bill, which is brought in aid of their judgment at law.
Having thus shown the nature of the claim set up, and the seve *516 ral characters in which the parties are attempted to be made liable, let us notice the acknowledged rules by which we are to judge of that liability. A plaintiff cannot demand by the same bill several distinct matters against several defendants. Mitford’s Pl. 181. This rule is general in terms, and may not appear to have an application to the case, yet I apprehend it must fall within the spirit of the rule. The author in continuation says; “ When one general right is claimed, though the defendants have separate and distinct interests, a demurrer will not hold.” The clear deduction from this is, that although the defendants may have a separate and distinct interest, yet they must have an interest in the same object, in relation to which redress is sought. And when the defendants do not sustain any relation or privity towards one another, nor to the subject matter of the suit, nor towards the plaintiff, but stand in different capacities, and upon different grounds of accountability, and to several persons, the reason of the rule would seem to apply to them. It is certain'that several and distinct matters cannot be included in the same bill, even as between the same parties; and the reason given is, that separate and distinct examinations and accounts, would be required. 4 Johns. Chan. Rep. 204. If matters different in their natures between the same parties, would subject a bill to a demurrer, the reason of the ruffe must apply with equal force to different defendants who have no mutual or connecting interest in the same subject matter. Wren et al. v. Gayden, decided this term.
Let us, then, examine how these defendants stand in relation to this matter. Supposing that it is still a claim unchanged in its character against the estate of Joseph King; there might be some propriety in making all persons parties, who had been administrators of the estate, and also their several sureties. This rule would necessarily include, First, Henry Cassels and Agrippa Gayden as sureties of William King, (he being dead.) Secondly, David Lea and Richard Hurst, as his second sureties; and Thirdly, Lea and Hurst as administrators, with Davis and Jones as their sureties. And lastly, John Burton, as administrator, and Edmund Jenkins nd William Gardner as his sureties. If the bill had stopped after ncluding these parties, it would probably be free from 'objection; *517 but it does not. Other parties are included, who do not appear to sustain a responsible relation to the plaintiffs in regard to the subject matter of the bill. John Burton, as the executor of the last will and testament of William King, in his capacity of executor, is also made a party. In his capacity of executor, his responsibility is widely different from that responsibility which arose in consequence of his mal-administration of the estate of Joseph King, and would require a different examination, and a different account. As executor of William King, he was trustee for creditors and distributors of the estate, and there is nothing to show that the complainant had brought himself within the rule by which the executor could know him as a creditor.
But even if Burton in his capacity of executor, was liable for the mal-administration of William King, how could his' sureties, Loury and Stewart, be considered also liable? They had entered into bond with him, for the performance of his duties as executors. They did not undertake to be responsible for the acts of William King. As sureties, they have a right to stand upon the terms of their undertaking, and that undertaking was for John Burton as executor. Their bond did not make them responsible • for the mal-administration of William King. If Burton has performed his duties as executor, there can be no reason for making them liable. It is immaterial as to them whether Burton discharged the duties of administrator or not, as they did not undertake to be responsible for him in that capacity.
The plaintiffs predicate their claim solely on the ground of the mal-administration of Joseph King’s estate, and with that estate, or the administration of it, the defendants, Loury and Stewart, are wholly unconnected; and if King had property in his possession, which was liable to the complainants’ demand, and even if that property came into the hands of Burton as executor, the liability of these defendants is secondary.
Upon this view of the liabilities of the parties, it is believed that the chancellor properly sustained the demurrer, and we have proceeded upon the supposition that it is still, as the complainants insist, a claim against the estate of Joseph King. The same consequence would necessarily result, if we were to consider the claim *518 as changed by the judgment against William King in his own right; and as the parties may wish to pursue their claims in a new shape, we forbear giving any opinion as to the effect of that judgment.
The demurrer must be sustained, and the bill dismissed.